J-A20027-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: H.S.G., A/K/A H.G., A/K/A H.S.H., A/K/A H.H., MINOR CHILD | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.G., FATHER | : : : : | |
| | : | No. 221 WDA 2021 |

Appeal from the Order Entered January 22, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): CP-02-AP-0000209-2019

BEFORE: PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: September 21, 2021**

J.G. ("Father") appeals from the order dated January 19, 2021, and entered on January 22, 2021, which granted the petition filed by the Allegheny County Office of Children, Youth, and Families ("CYF") to involuntarily terminate his parental rights to his minor daughter, H.S.G. (born in February of 2015) ("Child"), pursuant to sections 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938.[1] After careful review of the record and applicable law, we affirm.

The orphans' court provided the following relevant factual history in its Pa.R.A.P. 1925(a) opinion:

---

[1] The rights of Child's biological mother, R.D.H. ("Mother"), and of any unknown father were also terminated on the same date; however, neither party has filed an appeal.

Child was born [in] February [of] 2015. Through Mother, … Child has a half-sibling known as R.M.H., age 11, and the parental rights to R.M.H. were terminated at the same hearing.

CYF first became involved with the family prior to … Child's birth, when concerns were raised regarding inadequate physical care of … Child's half-sibling. Additional CYF involvement occurred after … Child's birth due to concerns about substance abuse, domestic violence between Mother and Father[,] and inadequate housing. Mother, Father[,] and the father of [R.M.H.] also have long histories of criminal charges and entanglement.

CYF opened a case on … Child and her sister in July of 2017[,] and has been consistently involved with the family since then. After a period of time in which … Child and her sister lived with Mother and experienced housing and food insecurity, they came into the care of their maternal grandmother ("MGM"). In March of 2018, Mother and her paramour took the children to Tennessee, with Mother stating that she planned to stay in Tennessee; however, when Mother was arrested there, the children were returned to MGM's care.

During the [spring] of 2018, Father was arrested and jailed for violating parole and was ordered into the Renewal Center,[2] but on May 28, 2018, he was charged with fleeing from the facility, and an arrest warrant was issued. Finally, on June 21, 2018, CYF obtained an Emergency Custody Authorization ("ECA") after learning that Mother had taken off with the children and could not be located. This was especially concerning because Mother had mental health as well as drug and alcohol issues, and the children were medically not up[-]to[-]date. Moreover, the children had witnessed domestic violence between Mother and her paramour.

The ECA returned the children to MGM, with whom they had now been living for years. Father did not attend the shelter hearing and was on the run from the Renewal Center with an active warrant for his arrest.

On June 26, 2018, CYF filed petitions to declare … Child and [R.M.H.] dependent, and the petitions were granted on August 8, 2018. [] Child was never returned to the physical or legal custody

_____

[2] The Renewal Center is a Pittsburgh-based community corrections facility that provides rehabilitation and counseling programs to individuals in the criminal justice system. **See** CYF's Brief at 5 n.8.

of Father or any other parent. MGM was appointed [as the] educational and medical decision-maker for … Child.

CYF developed reasonable goals for Father, which were also ordered by [the orphans' court]. Father was to participate in domestic violence programming, contact the agency for visitation, resolve his criminal issues and obtain housing. Over the course of the next year and a half, Father made virtually no progress toward any of these goals….

[] Child is outgoing and doing well in school in MGM's care. [] Child is by all accounts happy with MGM and has a mutually loving and bonded relationship with MGM. She is up[-]to[-]date medically and is in therapy. Dr. Rosenblum, the psychologist who conducted two sets of evaluations in this matter, confirmed that … Child appears to be thriving with MGM and that moving to adoption by MGM is now consistent with … Child's needs and welfare. Notably, Father did not show up for his scheduled evaluation with Dr. Rosenblum.

On November 25, 2019, CYF filed its petition to terminate parental rights, clearing the way for adoption of … [C]hild by MGM. The agency stated that it was proceeding against Father on the basis of [s]ubsections 2511(a)(2), (a)(5), (a)(8), and [s]ubsection (b) [of the Adoption Act]. As of the hearing date, the children had been in [MGM's] care for more than two years.

Orphans' Court Opinion ("OCO"), 3/12/21, at 2-4 (citations to record omitted).

After a termination hearing, which was held on January 19, 2021, the orphans' court terminated Father's parental rights to Child, pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8), and (b).[3] Father filed a timely appeal on February 12, 2021, along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i).

---

[3] The orphans' court has since acknowledged that it erred in including subsection (a)(1) in its termination order, as this subsection was not alleged by CYF, nor did the court make such a conclusion; thus, this portion of the January 19, 2021 order is vacated. OCO at 6.

Herein, Father presents the following questions for our review:

1. Whether the [orphans'] court erred and/or abused its discretion as a matter of law in concluding that the necessary burden of proof was met, and that Father cannot or will not remedy conditions and causes of the incapacity, abuse, neglect, or refusal that caused … [C]hild to be without essential parental care, control, or subsistence necessary for [her] physical or mental well-being pursuant to 23 Pa.C.S. § 2511(a)(2)[?]

2. Whether the [orphans'] court erred and/or abused its discretion as a matter of law in concluding that the necessary burden of proof was met, and that Father cannot or will not remedy conditions which led to the removal within a reasonable period of time and that termination of parental rights would best serve the needs and welfare of … [C]hild pursuant to 23 Pa.C.S. § 2511(a)(5)[?]

3. Whether the [orphans'] court erred and/or abused its discretion as a matter of law in concluding that the necessary burden of proof was met, and termination of parental rights would serve the needs and welfare of … [C]hild pursuant to 23 Pa.C.S. § 2511(a)(8)[?]

4. Whether the [orphans'] court erred and/or abused its discretion as a matter of law in concluding that the necessary burden of proof was met, and that the developmental, physical, and emotional needs and welfare of … [C]hild would be served by termination of parental rights pursuant to 23 Pa.C.S. § 2511(b)[?]

Father's Brief at 8-9.

We review an order terminating parental rights in accordance with the following standard:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury

- 4 -

verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

We are guided further by the following: Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under [s]ection 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [s]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [s]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between

- 5 -

parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted).  The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid.  *R.N.J.*, 985 A.2d at 276.

With regard to section 2511(b), we direct our analysis to the facts relating to that section.  This Court has explained that:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child.  In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child."  In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond.  *Id.*  However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists.  *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008).  Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.  *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Before we address the merits of Father's issues, we note that appellate briefs must conform in all material respects to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure.  Pa.R.A.P. 2101.  Rule 2119 provides that the argument section of an appellate brief "shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of

authorities as are deemed pertinent." Pa.R.A.P. 2119(a). "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived." *Lackner v. Glosser*, 892 A.2d 21, 29 (Pa. Super. 2006) (citations omitted). "Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." *Id.* (citations omitted). "This Court is neither obliged, nor even particularly equipped, to develop an argument for a party." *Commonwealth v. B.D.G.*, 959 A.2d 362, 371-72 (Pa. Super. 2008) (explaining that to do so would place the Court in the conflicting roles of advocate and neutral arbiter).

Here, Father presents four questions for our review; however, he combines his arguments into one, two-page section, in contravention of Rule 2119(a). *See* Father's Brief at 10-11. Additionally, despite listing a few case citations in his Table of Authorities, *see id.* at 3, Father fails to cite to a single case in support of his argument. In fact, the argument section of his brief is completely devoid of any legal analysis whatsoever. *See id.* at 10-11; Pa.R.A.P. 2119(a). Instead, Father broadly claims, in boilerplate language, that the orphans' court erred in terminating his parental rights to Child, pursuant to 23 Pa.C.S. § 2511. Father's Brief at 10. In support of his claim, he merely states that the conditions which led to Child's removal were primarily related to Mother, that he was only tasked to resolve his criminal matters and to obtain stable housing, *see id.* at 11 (stating that Father's efforts to meet his goals "were nearly complete" at the time of the termination

hearing), and that he maintained a bond with Child at all relevant times. **See id.** (Father's contending that he regularly contacted Child with calls, cards, and gifts). No discussion of the law or further analysis is provided. Hence, we deem Father's issues waived for failure to develop his argument. "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." **Estate of Haiko v. McGinely**, 799 A.2d 155, 161 (Pa. Super. 2002) (citing, *inter alia*, Pa.R.A.P. 2119(b)). "Without a reasoned discussion of the law … our ability to provide appellate review is hampered. It is not this Court's function or duty to become an advocate for [Father]." **Id.** (internal citations and quotation marks omitted).

Nevertheless, even if we did not conclude Father's issues are waived, we would deem his claims to be wholly without merit. The trial court terminated Father's parental rights pursuant to sections 2511(a)(2), (5), (8), and (b). We would only need to agree with the orphans' court as to any one subsection of section 2511(a), as well as section 2511(b), in order to affirm. **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Thus, we would analyze the court's decision to terminate under section 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without

essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We would first address whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to section 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical and mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Moreover, we have consistently held that "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006). Rather, "parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019).

Instantly, Father was ordered to complete the following goals as a precursor to any consideration of his parenting Child: participate in domestic violence programming, contact CYF for visitation, resolve his criminal issues, and obtain housing. OCO at 7. Over the course of the next year and a half, the orphans' court found Father failed to make any notable progress toward any of these goals. *Id.* He attended the initial intake for the domestic violence program to which he was referred, but then failed to attend any of the subsequent sessions. At the permanency review hearing in September of 2020, Father stated that he did not believe he needed domestic violence classes and that he did not believe the court had the power to make him do something to which he did not consent. Based on Father's testimony, the orphans' court concluded that "Father has not and will not work toward [the goal of domestic violence counseling] regardless of how much time he is given." *Id.* at 7-8.

Likewise, the orphans' court concluded that Father failed to complete the goal of obtaining verifiably adequate housing. *Id.* at 8. "He consistently foiled attempts to assist him in obtaining such housing or to verify that he had obtained appropriate housing on his own." *Id.* At the termination hearing, Father testified that he had been renting in the Homewood area of Pittsburgh, but he refused to provide his address. The court did not find Father's testimony credible. *Id.*

As to Father's goal of clearing any outstanding criminal matters, the court determined that if Father has outstanding warrants or is required to be in a facility such as the Renewal Center, this would obviously affect his ability to care for Child and to visit her. *Id.* At the time of the termination hearing, Father still had three outstanding arrest warrants; thus, he had clearly not complied with this goal. *Id.* Father attempted to minimize the warrants by claiming that they were only for outstanding fines and restitution. "At the end of the hearing, Father asserted that he could quickly resolve all of the criminal and housing issues, but his last-minute claims were unavailing to [the orphans' c]ourt. If Father was sincere in his desire to care for … Child, he could have taken these steps before now, and thus, the [c]ourt discredited his assertions." *Id.* at 9.[4]

_____

[4] The orphans' court noted that Father's status regarding his fleeing from the rehabilitation facility at the Renewal Center remains unclear. *Id.*

- 11 -

Regarding Father's goal of arranging visitation through CYF, the court opined:

Father allowed the outstanding warrants to come between him and any visits with … Child[,] and [he] remained unmotivated to take care of these affairs. Father was permitted supervised visits with … Child, to be arranged informally with MGM, but this became complicated when MGM was informed by the court that she would have to call the police if he came because of his outstanding warrants. Prior thereto, Father did have occasional visits with … Child. [He] never addressed the warrants, even though they impeded his visits with … Child, and the last recorded visit took place more than a year ago[,] in December of 2019.

*Id.* The last documented contact Father had with CYF was on January 13, 2020, in the form of a message he left with his caseworker's supervisor. When the caseworker returned his call, Father indicated that he did not have to speak to CYF. Thus, the court concluded that Father failed to meet this goal and, again, has demonstrated an unwillingness to do so. *Id.*

The orphans' court concluded:

Only at the hearing did Father profess … that he could achieve all of the goals set for him except for participation in domestic violence counseling. [] Child was in care for 31 months altogether and for 14 months since a petition to terminate parental rights was filed, and this [c]ourt puts no stock in Father's last-minute proclamations. Father has had more than a reasonable amount of time to progress. Courts in similar circumstances have reiterated that a "parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *Adoption of K.G.*, 936 A.2d 1128, 1133 (Pa. Super. 2007).

*Id.* at 10. The orphans' court's determination under section 2511(a)(2) is well-supported by the record, and we would discern no abuse of discretion.

- 12 -

As for its termination of Father's parental rights under section 2511(b), the court relied on the following in reaching its decision:

> The caseworker testified that … Child is having her needs met in the care of MGM. Dr. Rosenblum, the psychologist, conducted two interactional evaluations of … Child and MGM. The psychologist described … Child's relationship to MGM as "very close" and MGM as a "warm, nurturing parent figure" who "does a good job of keeping the girls safe and maintaining a stable home environment" for … Child and her sister. MGM has … Child in therapy. [] Child appeared "happy and reasonably well adjusted." While … Child could benefit from tutoring in math, the psychologist found that the environment was stable. As for bonding, the psychologist noted that … Child is "very attached" to MGM and feels "safe and secure" with her. Because of these observations, he recommended adoption as consistent with her needs and welfare…. It is also noteworthy that counsel for child, who visited with … Child virtually, took the position that termination of parental rights and adoption by MGM would further … Child's needs and welfare and stated that, to the extent … Child could communicate her wishes[,] … Child desired to live with MGM. CYF's caseworker testified similarly that the agency had no concerns that termination of parental rights would be detrimental to … Child.

*Id.* at 11 (citations to record omitted). As there is competent evidence in the record to support the orphans' court's credibility and weight assessments regarding Child's needs and welfare, and the absence of any bond with Father, we would conclude that the court did not abuse its discretion as to section 2511(b).

Accordingly, we affirm the order terminating Father's parental rights to Child, pursuant to 23 Pa.C.S. § 2511(a)(2) and (b). *See In re K.L.S.*, 934 A.2d 1244, 1246 n.3 (Pa. 2007) ("When the appellant has failed to preserve

issues for appeal, the issues are waived, and the lower court's order is …

properly 'affirmed.'").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/2021